**MAGNOLIA PETROLEUM CO. et al. v. FEDERAL COMMUNICATIONS COMMISSION.**

No. 6260.

United States Court of Appeals for the District of Columbia.

Argued Jan. 7, 1935.

Decided Feb. 25, 1935.

Geo. E. Elliott, of Washington, D. C., for appellants.

George B. Porter, Fanney Neyman, and Paul D. P. Spearman, all of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

MARTIN, Chief Justice.

This appeal relates to certain concurrent orders made by the Federal Radio Commission (now the Federal Communications Commission) in June, 1934, affecting broadcasting stations KRGV and KWWG, located in the state of Texas.

It appears that station KRGV, Inc., located at Harlingen, Tex., was licensed to operate upon the frequency of 1,260 kilocycles, unlimited time, with power output of 500 watts, while station KWWG, Frank P. Jackson, owner, located at Brownsville, Tex., was licensed to operate unlimited time with the same frequency and power, the two stations sharing time equally with one another.

In August, 1933, violent storms visited that part of Texas and station KWWG suf-fered so severely from them that with permission from the Radio Commission it suspended operations and for a time was silent. Thereupon station KRGV applied to the Radio Commission for a modification of its license, permitting it to operate unlimited time without change of frequency or power and without sharing time with KWWG as theretofore.

At the same time station KWWG filed an application with the Radio Commission for a renewal of its license, and also for the privilege of assigning the license when renewed to Port Arthur College, an institution located at Port Arthur, Tex. The application was for the same frequency and power, but with operation limited to daytime only.

Port Arthur College at the same time applied to the commission for a construction permit to change the location of KWWG from Brownsville to Port Arthur, to be operated by the college with the same frequency and power and with daytime operation only. These applications were heard at public hearings by the Radio Commission after due notice to all interested parties, and they were severally granted by the commission.

The commission held: That Port Arthur College is legally, technically, and financially qualified to hold a permit and license such as applied for herein. That there is a need for the establishment of a broadcasting station such as is proposed herein at Port Arthur, Tex. That the operation of station KWWG at Port Arthur during daytime hours would not cause objectionable interference in the reception of any other station. That the granting of the application of Frank P. Jackson for a renewal license, the granting of the application of Frank P. Jackson and Port Arthur College for assignment of station license to the latter party, and the granting of the application of Port Arthur College for the construction permit for the removal of station KWWG to Port Arthur (the renewal license and permit to provide for the operation of station KWWG during daytime hours only) will serve the public interest, convenience, and/or necessity.

The present appellants, the Magnolia Petroleum Company and Sabine Broadcasting Company, Inc., appeared as interveners at the hearing of these applications. They made no objection to the order granting full time to station KRGV, but objected to the order granting the application of KWWG

for the removal of the location of that station to Port Arthur, Tex. They also objected to the granting of permission to Port Arthur College to operate the station. The objections of the interveners were heard and overruled by the commission and the orders aforesaid were made permanent. The interveners have appealed from these orders.

The jurisdiction of this court in passing upon such appeals is restricted by the following provision of section 402 (e), Communications Act of 1934, 48 Stat. 1064, 1093 (47 USCA § 402 (e):

"402 (e) * * * Provided, however, That the review by the court shall be limited to questions of law and that findings of fact by the Commission, if supported by substantial evidence, shall be conclusive unless it shall clearly appear that the findings of the Commission are arbitrary or capricious. * * *"

The appellants, the Magnolia Petroleum Company and Sabine Broadcasting Company, Inc., are lessor and lessee respectively of broadcasting station KFDM, located at Beaumont, Tex., and licensed to operate upon a frequency of 560 kilocycles unlimited time with power output of 1,000 watts daytime and 500 watts nighttime. Appellants contend that the commission's decision should be reversed for two reasons: (1) That it violates the Davis Amendment to the Radio Act of 1927 (45 Stat. 373, § 5), as re-enacted in section 307 (b) of the Communications Act of 1934 (48 Stat. 1064, 1084), 47 USCA § 307 (b); and (2) that the findings of public interest, convenience, and/or necessity made by the commission were arbitrary and capricious and are not sustained by substantial evidence.

█ In respect of the first contention, it appears that under the regulation adopted by the broadcast division of the Federal Communications Commission on October 10, 1934, a separation was made between the night quota and day quota, respectively, due to the state of Texas, and that the state was allocated 13.18 units daytime, whereas 13.22 units daytime have been assigned to it. The assignment includes 0.3 units because of the addition of the daytime station in Port Arthur to the quota charge of daytime service in the state of Texas. The deletion of the Port Arthur station accordingly would serve to subtract from the quota figures assigned for day service in Texas 0.3 units, which would leave Texas under quota. It may therefore fairly be stated that the state of Texas on daytime service is as near to its precise quota as is practicably possible. We therefore think that the granting of daytime operation to the Port Arthur station would not be obnoxious to the Davis amendment.

█ The second objection of the interveners relates to the question of commercial loss which they may suffer by reason of the establishment of station KWWG at Port Arthur College. It cannot be contended that there would result any broadcasting interference from the operation of the two stations inasmuch as there is a wide separation in frequency between them and the Port Arthur station would operate in the daytime only. The objection of the interveners therefore relates solely to the loss of patronage which the Beaumont station would experience by reason of the competition of the Port Arthur station. Beaumont is a city of about 57,000 inhabitants and Port Arthur has about 50,000. The two cities are about 15 miles apart. In the past Port Arthur has had no broadcasting station, but has been dependent upon remote control broadcasting by the Beaumont station. The Port Arthur College has purchased time from the Beaumont station and employed it for broadcasting originating in Port Arthur. These were the only local programs which were broadcast for the benefit of the Port Arthur people during that time. The record shows a greater demand for broadcasting service in Port Arthur than may be accommodated through the use of a remote control studio of appellants' station. In view of the size of these communities and their respective demands for broadcasting service, it is reasonable to believe that there would be sufficient commercial support to maintain a station in each community.

We do not consider it necessary to discuss the evidence in detail. It appears, however, that Port Arthur College is a well-established educational institution offering courses in business and in marine radio. By reason of its facilities for teaching marine broadcasting, the college has unusual experience and qualifications in radio technique. The service rendered by the college station in respect to the location of ships and other maritime information will be of great value to the people of that city. We do not think that the college should be denied the privilege of maintaining a broadcasting station because it will compete for patronage with the Beaumont station.

442

In WGN v. Federal Radio Commission, 62 App. D. C. 385, 68 F.(2d) 432, 433, wherein radio station WGN objected to the granting of an application for modification of license of another Chicago station, on the grounds that the decision subjected it to an economic injury through the allocation of additional facilities to the city of Chicago and the consequent increase in competition for radio patronage in that city, this court said: "This complaint rests upon the theory that the modification will increase the competition among broadcasting stations in Chicago, and thereby inflict a pecuniary loss upon each of the stations already established therein, including WGN. This complaint, however, is so vague, problematical, and conjectural as not to furnish a present substantial objection to the Commission's decision."

We therefore held that WGN was not a party aggrieved or whose interests were adversely affected.

Upon a review of the entire record, we are satisfied that the decision of the commission was not arbitrary or capricious, but is sustained by substantial evidence, and that its findings in respect to the public interest, convenience, and/or necessity are sustained by the record.

The decision of the commission is therefore affirmed.